# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **GWENDOLYN GAY KERSH,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:16-cv-02671-AJB** |
| **NANCY A. BERRYHILL,** | : | |
| ***Acting Commissioner, Social*** | : | |
| ***Security Administration,*** | : | |
| | : | |
| **Defendant.**[1] | : | |

# O R D E R   A N D   O P I N I O N[2]

Plaintiff Gwendolyn Gay Kersh ("Plaintiff") brought this action pursuant to

sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g),

1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the

Social Security Administration ("the Commissioner") denying her application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits

---

[1]      On January 23, 2017, Nancy A. Berryhill became the Acting
Commissioner of Social Security.  Under the Federal Rules of Civil Procedure,
Berryhill "is automatically substituted as a party."  Fed. R. Civ. P. 25(d).  The Clerk is
hereby **DIRECTED** to amend the case style to reflect the substitution.

[2]      The parties have consented to the exercise of jurisdiction by the
undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil
Procedure.  (*See* Dkt. Entry dated 1/17/17).  Therefore, this Order constitutes a final
Order of the Court.

("SSI") under the Social Security Act.[3]  For the reasons below, the undersigned

**AFFIRMS** the final decision of the Commissioner.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 11, 2013, alleging disability commencing on October 1, 2011.  [Record (hereinafter "R") at 204-15]. Plaintiff's applications were denied initially on July 9, 2013, and upon reconsideration on November 27, 2013.  [R85-136, 141-48, 153-56].  Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on December 31, 2013. [R157-58].  An evidentiary hearing was held on January 28, 2015, [R46-84], during which Plaintiff amended the alleged onset date to August 23, 2013, her fifty-fifth

_____

[3]         Title II of the Social Security Act provides for federal Disability Insurance Benefits ("DIB").  42 U.S.C. § 401 *et seq*.  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits ("SSI") for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance eligibility.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim.  *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

2

birthday, [R50, 233]. The ALJ issued a decision on March 20, 2015, denying Plaintiff's application on the ground that she was not "disabled" under sections 216(i) and 223(d) of the Social Security Act from the alleged onset date of August 23, 2013, through the date of the decision. [R35]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on May 18, 2016, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then initiated her action in this Court on July 22, 2016, seeking review of the Commissioner's decision. [Doc. 1]. The answer and transcript were filed on December 16, 2016. [Docs. 9, 10]. On January 18, 2017, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 13], and on February 17, 2017, the Commissioner filed a response in support of the decision. [Doc. 14].[4] The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[4] Plaintiff did not file a reply brief, and neither party requested oral argument. (*See* Dkt.).

AO 72A
(Rev.8/8
2)

## II.     STATEMENT OF FACTS[5]

### A.     Background

Plaintiff was born on August 23, 1958, and therefore was fifty-six years old at the time the ALJ issued his decision. [R35, 53, 233]. Plaintiff has a high-school education and prior work experience as both a stock clerk and a collector. [R52-53, 237, 248]. She alleges disability based on chronic kidney disease, emphysema, high blood pressure, high cholesterol, acid reflux, chronic pulmonary disease ("COPD"), depression, anxiety, panic attacks, and arthritis in the back. [R51, 247].

### B.     Lay Testimony

In the hearing held before the ALJ, Plaintiff testified that she had not engaged in any work activity since her disability onset date of August 23, 2013. [R53]. She stated she has depression, and that the last couple of years had been difficult for her and her husband because he had lost his job, they had to declare bankruptcy, they lost their house, and they had to move in with Plaintiff's parents. [R57, 77-78]. She reported that her general practitioner prescribes her medication for depression but that it had not

---

[5]     In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal. [*See* Docs. 13, 14; *see also* Doc. 12 (Sched. Ord.) at 3 (providing that "[t]he issues before the Court are limited to the issues properly raised in the briefs")].

4

AO 72A
(Rev.8/8
2)

been recommended that she see a mental-health professional. [R78]. She takes an antidepressant every day and "get[s] through it the best [she] can." [R78].

Plaintiff explained that her most severe medical impairments are fatigue and the arthritis in her back. [R54]. She indicated that the pain was in her lower back and goes down in her legs, [R57], and that it keeps her from doing a lot of housework and requires her to break up tasks over the course of a day. [R54-55]. Plaintiff treats the back pain with naproxen[6] and aspirin and will lie down during the day for relief. [R56]. Plaintiff testified that since her husband lost his job, she has been without health insurance, which negatively affected her ability to seek treatment for her back pain. [R56-57].

Plaintiff further testified that she has been treated for shortness of breath, bronchitis, emphysema, and COPD, and that she had cut back to smoking one-to-two cigarettes per day. [R59]. She stated that pulmonary function testing was suggested when she was first diagnosed with COPD, but it was at about the same time her

---

[6]     Naproxen is a nonsteroidal anti-inflammatory drug ("NSAID") that works by stopping the body's production of a substance that causes pain, fever, and inflammation.     MedlinePlus,     Naproxen, https://medlineplus.gov/druginfo/meds/a681029.html (last visited 3/6/18).

AO 72A
(Rev.8/8
2)

husband lost his job.  [R61-62].  She reported that shortness of breath caused her fatigue but that she was not on any medication for a pulmonary condition.  [R63-64].

Plaintiff also reported that she has pain associated with the use of her right arm and hand and has difficulty lifting laundry, washing dishes, and folding clothes. [R75-76].  She takes Nexium[7] every day for a hiatal hernia and stomach ulcer, [R79], and she takes medication every night for neuropathy she characterizes as burning pain in her feet, [R80].  She stated that the neuropathy medication helps a lot but that leg pain still limits her sleeping, which causes daytime fatigue and affects her concentration.  [R80-81].

### C.    Medical Records

In June 2004, Plaintiff sought medical care at Rockdale Family Practice, P.C., for neck pain and numbness in the middle two fingers of her right hand.  [R390].  The

---

[7]    Esomeprazole, sold under the brand name Nexium, is a proton-pump inhibitor used to decrease stomach acid and treat ulcers.  MedlinePlus, Esomeprazole, https://medlineplus.gov/druginfo/meds/a699054.html  (last visited 3/6/18).

AO 72A
(Rev.8/8
2)

impression given was neck pain and paresthesia[8] in the fingers of the right hand; Plaintiff was referred for a neck x-ray, and she was prescribed neurontin.[9] [R390].

Plaintiff returned to Rockdale Family Practice on March 22, 2005, with complaints of back pain, numbness in her hand, and pain in the right upper quadrant of her abdomen. [R386]. It was noted that an x-ray of Plaintiff's right hand showed arthritic changes but was otherwise remarkable, and an MRI yielded normal results. [R386]. Plaintiff was started on nonsteroidal medications, given bilateral elbow bands for tendinitis, and given twenty Darvocet-N 100 pills,[10] with no refills. [R386].

_____

[8] Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. It is usually painless and described as tingling or numbness, skin crawling, or itching. Nat'l Instit. of Neurological Disorders & Stroke, Paresthesia Information Page, https://www.ninds.nih.gov/Disorders/All-Disorders/Paresthesia-Information-Page (last visited 3/6/18).

[9] Neurontin (gabapentin) is an anticonvulsant often used to treat restless legs syndrome and neuralgia (burning, stabbing nerve pain). MedlinePlus, Gabapentin, https://medlineplus.gov/druginfo/meds/a694007.html (last visited 3/6/18).

[10] Darvocet is the brand name of a combination product containing acetaminophen and propoxyphene. It is an opioid medication used to relieve mild to moderate pain. Medication Guide, Darvocet-N 50 & 100, http://www.fda.gov/downloads/Drugs/DrugSafety/UCM187067.pdf (last visited 3/6/18).

AO 72A
(Rev.8/8
2)

On March 21, 2010, after Plaintiff experienced slurred speech, she underwent a head computerized tomography ("CT") scan at Rockdale Medical Center. [R424]. The interpreting physician opined that the CT showed no acute abnormality but also noted that it showed "coarse calcifications in the caudate nuclei and lateral basal ganglia on the left," that the calcifications were "likely degenerative but could be physiological," and that clinical correlation could be helpful in determining their significance. [R424].

A month later, Plaintiff suffered generalized weakness and shortness of breath and was admitted for hospitalization at Rockdale Medical Center. [R431-37]. Her current medications were noted to be Nexium, Lipitor,[11] and lisinopril.[12] [R433]. She

---

[11]    Lipitor (atorvastatin) is a statin used to reduce the amount of fatty substances in the blood and to increase the "good cholesterol" in the blood. MedlinePlus, Atorvastatin, https://medlineplus.gov/druginfo/meds/a600045.html (last visited 3/6/18).

[12]    Lisinopril is an angiotensin-converting enzyme ("ACE") inhibitor used to treat high blood pressure. MedlinePlus, Lisinopril, https://medlineplus.gov/druginfo/meds/a692051.html (last visited 3/6/18).

AO 72A
(Rev.8/8
2)

was assessed with acute bronchitis,[13] dehydration, hypokalemia,[14] and hypomagnesemia.[15] [R433].

On February 15, 2011, Plaintiff was found unresponsive by her husband and subsequently hospitalized for an overdose of tramadol.[16] [R450]. At discharge, her

---

[13] Bronchitis is inflammation of the main air passages to the lungs. "Acute" means that the symptoms have been present for only a short time. MedlinePlus, Bronchitis, http://www.nlm.nih.gov/medlineplus/ency/article/001087.htm (last visited 3/6/18).

[14] Hypokalemia refers to low potassium levels. Potassium is needed for cells to function properly. MedlinePlus, Low Potassium Level, https://medlineplus.gov/ency/article/000479.htm (last visited 3/6/18).

[15] Hypomagnesemia refers to low magnesium levels. All organs in the body, especially the heart, muscles, and kidneys, need magnesium. It also contributes to the makeup of teeth and bones and is needed for metabolism. MedlinePlus, Low Magnesium Level, https://medlineplus.gov/ency/article/000315.htm (last visited 3/6/18).

[16] Tramadol is an opiate (narcotic) analgesic used to relieve moderate to moderately severe pain. MedlinePlus, Tramadol, https://medlineplus.gov/druginfo/meds/a695011.html (last visited 3/6/18).

AO 72A
(Rev.8/8
2)

medications consisted of albuterol,[17] Lipitor, clonidine,[18] Nexium, KCl,[19] lisinopril, and amlodipine.[20]  [R444].

On January 13, 2012, Plaintiff reported to Snapfinger Woods Family Practice Group with complaints of cough, wheezing, chest discomfort, sinus pressure and congestion, and nasal drainage and congestion.  [R483].  A chest CT taken on January 18, 2012, indicated emphysema but was negative for acute pulmonary process.  [R496].

A head and neck CT taken on March 5, 2013, showed arthritic changes to Plaintiff's right hand and shoulder and "presumed" small airways disease.  [R543-44].

---

[17]    Albuterol, also sold under the brand name Ventolin, is a bronchodilator used to prevent and treat wheezing, difficulty breathing, chest tightness, and coughing caused by lung diseases such as asthma and COPD.  MedlinePlus, Albuterol, https://medlineplus.gov/druginfo/meds/a607004.html  (last visited 3/6/18).

[18]    Clonidine is a centrally acting alpha-agonist hypotensive agent used to treat high blood pressure.  MedlinePlus, Clonidine, https://medlineplus.gov/druginfo/meds/a682243.html  (last visited 3/6/18).

[19]    This notation appears to refer to potassium chloride, which is used to prevent or treat low blood levels of potassium.  WebMD, Kcl-20 Liquid, https://www.webmd.com/drugs/2/drug-14555/kcl-20-oral/details (last visited 3/6/18).

[20]    Amlodipine, also sold under the brand name Norvasc, is a calcium channel blocker used alone or in combination with other medications to treat high blood pressure and chest pain (angina).  MedlinePlus, Amlodipine, https://medlineplus.gov/druginfo/meds/a692044.html  (last visited 3/6/18).

AO 72A
(Rev.8/8
2)

On May 4, 2013, state agency medical consultant Abraham Oyewo, M.D., reviewed the record and opined that Plaintiff did not have any exertional, postural, or manipulative limitations, but must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. [R93-94, 105-06].

In June 2013, licensed psychologist Douglas E. Webb, Jr., Ph.D., conducted a consultative psychological evaluation. [R551-56]. In addition to her physical complaints, Plaintiff alleged anxiety, panic attacks, and depression. [R551]. Plaintiff reported that she began receiving outpatient treatment for depressive symptoms in 2002 and was prescribed antidepressant medications by her family physician. [R552]. Dr. Webb diagnosed Major Depressive Disorder (Moderate). [R554]. He opined that Plaintiff was not limited in terms of understanding and remembering simple and detailed instructions in a work setting or sustaining concentration, persistence, and pace. [R555]. He further opined that she was mildly limited in terms of interacting with the public, co-workers, and supervisors, and adapting to the stress of a typical work environment. [R556].

On July 5, 2013, state agency reviewing consultant Allen Carter, Ph.D., opined that Plaintiff had mild restriction of activities of daily living; mild difficulties in

11

maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. [R91-92, 103-04].

On October 8, 2013, state agency reviewing consultant Janise Hinson, Ph.D., affirmed the mental rating assessed by Dr. Carter in July 2013. [R116, 130].

On October 25, 2013, state agency reviewing physician Madena Gibson, M.D., affirmed Dr. Oyewo's May 2013 assessment of Plaintiff's physical limitations. [R116-19, 130-33].

On November 20, 2013, Plaintiff underwent a consultative examination conducted by G. N. Kini, M.D. [R575-81]. Plaintiff reported, among other things, that she had been having lower-back pain, radiating into her legs, for the past ten years and had been investigated for it, was receiving pain medication from a pain clinic, and had refused to take an epidural steroid injection that had been recommended. [R575-76]. Her present medications were Xanax,[21] a Ventolin inhaler, gemfibrozil,[22] lisinopril,

---

[21]    Xanax (alprazolam) is a benzodiazepine used to treat anxiety disorders and panic disorder. MedlinePlus, Alprazolam, https://medlineplus.gov/druginfo/meds/a684001.html (last visited 3/6/18).

[22]    Gemfibrozil, sold under the brand name Lopid, is used with diet changes (restriction of cholesterol and fat intake) to reduce the amount of cholesterol and triglycerides (other fatty substances) in the blood. MedlinePlus, Gemfibrozil, https://medlineplus.gov/druginfo/meds/a686002.html (last visited 3/6/18).

AO 72A
(Rev.8/8
2)

amlodipine, meloxicam,[23] and omeprazole.[24]  [R576].  Upon examination, Dr. Kini

found that Plaintiff's lungs were clear; she had normal range of motion in her back,

neck, shoulders, elbows, forearms, wrists, hip, knees, ankles, and feet; a straight-leg

raising test[25] was normal on both sides; her manual dexterity, grip and pinch strength,

graded extremity strength, and gait were normal; and an x-ray of the lumbar spine

yielded normal results.  [R576, 578-81].  Dr. Kini assessed chronic cigarette abuse,

questionable COPD, controlled hypertension, acid reflux, anxiety, depression, and back

pain.  [R577].  He opined that Plaintiff's anxiety and depression did "not appear to be

serious enough to consider disabling" and that her "back pain also does not appear

severe enough to prevent her from being employed in most normal occupations."

---

[23]     Meloxicam, sold under the brand name Mobic, is an NSAID medication and is often used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis.  MedlinePlus, Meloxicam, https://medlineplus.gov/druginfo/meds/a601242.html (last visited 3/6/18).

[24]     Omeprazole is a proton-pump inhibitor used to treat gastroesophageal reflux disease.  MedlinePlus, Omeprazole, https://medlineplus.gov/druginfo/meds/a693050.html  (last visited 3/6/18).

[25]     Straight-leg raising tests are done to help determine the reason for low-back and leg pain.  Positive tests are often associated with compressed or irritated nerve roots and herniated discs in the low back.  WebMD, Straight-Leg Test for Evaluating Low Back Pain, http://www.webmd.com/a-to-z-guides/straight-leg-test-for-evaluating-low-back-pain-topic-overview (last visited 3/6/18).

AO 72A
(Rev.8/8
2)

[R577]. Dr. Kini further opined that if Plaintiff used an inhaled steroid and long-acting bronchodilator, "she should be able to work in her previous occupation as a secretary without any problems," and he stated that overall, Plaintiff's examination "did not substantiate her claim of disability." [R577].

On November 27, 2013, state agency reviewing physician William Hand, M.D., affirmed Dr. Oyewo's May 2013 assessment of Plaintiff's physical limitations. [R116-17, 130-31].

D.     *Vocational-Expert Testimony*

A vocational expert ("VE") also testified before the ALJ. [R47]. She classified Plaintiff's past work as a stock clerk, (DOT 299.367-014), as "heavy" work and her past work as a bill collector (DOT 241.367-010) as "light" work, and she stated that there were no transferable skills from either position to any light occupation. [R52-53, 81-82]. The VE also testified that the collector position would require more than ten pounds of lifting. [R83].

The ALJ then asked whether a person who could perform light work but must avoid concentrated exposure to dust, fumes, odors, gases, or pulmonary irritants could perform Plaintiff's past work as a collector. [R82]. The VE testified that such a person

14

could work as a collector. [R82]. The VE further testified that if the person of Plaintiff's age were limited to sedentary work, she would "grid out."[26] [R82].

## III. ALJ'S FINDINGS

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2.  The claimant has not engaged in substantial gainful activity since August 23, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: chronic obstructive pulmonary disease, emphysema, bronchitis, and degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

. . .

---

[26] To "grid out" is to be found disabled based on one's age, impairments, and vocational level. The Medical-Vocational Rules ("grids") are predicated on an individual having an impairment that manifests itself by limitations in the strength requirements of a job. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e). The Eleventh Circuit has described the grids as follows:

The grids are a series of matrices which correlate a set of variables–the claimant's residual functional capacity (*i.e.*, the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

*Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985).

AO 72A
(Rev.8/8
2)

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except avoid concentrated exposure to dust, fumes, odors, gases, and pulmonary irritants.

. . .

6.      The claimant is capable of performing past relevant work as a collector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

. . .

7.      The claimant has not been under a disability, as defined in the Social Security Act, from August 23, 2013, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[R30-35].

The ALJ stated that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not

16

AO 72A
(Rev.8/8
2)

entirely credible. [R33]. The ALJ acknowledged that Plaintiff testified that she had depression but explained that he found Plaintiff's mental impairments not to cause any more than minimal limitation on her ability to perform basic work activities because: Plaintiff was not under the care of a mental-health professional, Plaintiff admitted to Dr. Webb that medication reduced her anxiety and depressive symptoms without side effects, and Dr. Webb opined that Plaintiff could understand and remember simple and detailed instructions and sustain concentration and that she had mild limitations in interacting and adapting to stress; Plaintiff was only mildly limited in her activities of daily living, as she was capable of personal grooming, cooking, driving, and shopping, and her reports of difficulty with cleaning pertained to back pain rather than psychological problems; Plaintiff was only mildly limited in social functioning, as she complained of anxiety and panic attacks but was able to interact with friends and family and stated that "she had no difficulty in getting along with others"; Plaintiff was only mildly limited in the area of concentration, persistence, or pace, despite her reports of low energy and sleep disturbance, based on Dr. Webb's opinion that she is not limited in sustaining concentration, persistence, and pace, and Dr. Webb's observation that during the examination Plaintiff was able to follow instructions and work at a normal pace; and Plaintiff experienced no episodes of decompensation of an extended duration.

17

AO 72A
(Rev.8/8
2)

[R31-32]. The ALJ also explained that he found a reduced range of light work appropriate based on the relatively benign findings of Dr. Kini and notes from treatment taking place at North Atlanta Medical Associates on January 31, 2014, and October 27, 2014. [R32]. The ALJ further stated that he assigned "significant weight" to the opinions of consultative examiners Dr. Webb and Dr. Kini because they had the benefit of interviewing, observing, and examining Plaintiff and because the opinions were supported by the objective findings upon examination as well as by Plaintiff's activities of daily living. [R34]. The ALJ also stated that he assigned "substantial weight" to the opinions of state-agency reviewing physicians Dr. Oyewo, Dr. Hand, and Dr. Gibson. [R34]. Finally, the ALJ explained that based on the VE's testimony, which he found consistent with the Dictionary of Occupational Titles, he found that Plaintiff could meet the physical and mental demands of her past work as a collector and thus that she was not disabled. [R35].

## IV. STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities.

19

*See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  [*Id*.].

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any

20

AO 72A
(Rev.8/8
2)

substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam);

AO 72A
(Rev.8/8
2)

*Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

AO 72A
(Rev.8/8
2)

## VI.  CLAIMS OF ERROR

Plaintiff first argues that the ALJ's decision not to include mental limitations in the RFC was not supported by substantial evidence.  [Doc. 13 at 9-10].  She contends that it was error to rely on Plaintiff's lack of mental-health treatment to discount her testimony regarding her symptoms, [R31], where the record establishes a history of depression, anxiety, and panic attacks and contains records of prescriptions of Xanax, Valium, and Celexa,[27] [R54, 56-67, 64, 77-78, 380, 394, 401, 403, 444, 471, 503, 560, 588]; Plaintiff testified that she takes an antidepressant every day and "get[s] through it the best [she] can," [R78]; Dr. Webb opined that Plaintiff had mild limitations in interacting with the public, co-workers, and supervisors and adapting to the stress of a typical work environment, [R556]; and Plaintiff testified that her treatment has been affected by her lack of insurance, [R56-57, 77-78].  [Doc. 13 at 9-10].  Plaintiff also suggests that the mental RFC is in conflict with the ALJ's finding that Plaintiff had

---

[27]      Valium (diazepam) is used to relieve anxiety, muscle spasms, and seizures.  MedlinePlus, Diazepam, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682047.html (last visited 3/6/18).  Celexa (citalopram) is an antidepressant used to increase amount of serotonin, a natural substance in the brain that helps maintain mental balance.  MedlinePlus, Citalopram, https://medlineplus.gov/druginfo/meds/a699001.html  (last visited 3/6/18).  Although Plaintiff has not provided a pinpoint citation to a record indicating that she was prescribed Valium or Celexa, the Court presumes, for the sake of reviewing her appeal, that the assertions are supported by the record.

AO 72A
(Rev.8/8
2)

mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace. [*Id*.].

Next, Plaintiff argues that the ALJ erred by failing to fully explain his analysis of the opinions of consultative examiners Dr. Webb and Dr. Kini. [Doc. 13 at 11-13]. She notes that Dr. Webb opined that Plaintiff was mildly limited in terms of interacting with the public, coworkers, and supervisors and adapting to the stress of a typical work environment, [R556], and argues that it was error for the ALJ to afford Dr. Webb's opinion "significant weight," yet fail to include those limitations in the RFC without explaining why he discounted them, [R31, 34]. [Doc. 13 at 11]. Plaintiff further contends that it was error for the ALJ to afford significant weight to Dr. Kini's opinion, [R577], because Dr. Kini did not indicate how his observations translated into functional limitations; Dr. Kini's opinion constituted an explicit opinion of non-disability, which is an issue reserved to the Commissioner; and the ALJ "failed to address the vague, conclusory statements" contained in Dr. Kini's opinion. [Doc. 13 at 12-13]. Plaintiff thus contends that Dr. Kini's opinion does not constitute substantial evidence to support the ALJ's RFC determination. [*Id*.].

Plaintiff then goes on to argue that because of the errors in the ALJ's handling of the evidence of mental impairment and the opinions of Dr. Webb and Dr. Kini, the

AO 72A
(Rev.8/8
2)

RFC is not supported by substantial evidence; the hypothetical question posed to the VE was incomplete; and the VE's testimony that Plaintiff was capable of performing past relevant work does not constitute substantial evidence to support the ALJ's finding of non-disability. [Doc. 13 at 13]. Plaintiff also contends that because the ALJ improperly relied on Dr. Kini's opinion, the RFC allowing for light work is not supported by substantial evidence, Plaintiff should have been limited to sedentary work, and because she was fifty-five years old at the amended alleged onset date and therefore was an individual of advanced age, she should have been found disabled pursuant to Rule 201.06 of the Medical-Vocational Guidelines. [Doc. 13 at 14].

In response, the Commissioner contends that the ALJ's RFC determination was supported by substantial evidence, as Plaintiff's diagnoses of mental impairments and her use of psychiatric medications do not indicate that her impairment limited her ability to work; the ALJ properly considered the opinions of Dr. Webb and Dr. Kini, as those physicians had the benefit of interviewing, observing, and examining Plaintiff before rendering their opinions, [R31, 34, 555-56, 575-77]; Dr. Webb's and Dr. Kini's opinions of mild limitation did not conflict with the RFC, [R31, 34, 555-56, 577]; the ALJ further explained that Plaintiff's reported activities of daily living and social functioning also showed that Plaintiff's symptoms were not as limiting as she alleged,

25

AO 72A
(Rev.8/8
2)

[R31-32, 553]; and while Plaintiff did testify that her lack of insurance affected her ability to obtain treatment for her physical conditions, she stated that she took an antidepressant that was prescribed by her primary care physician and had never been referred to a mental-health specialist, [R56-57, 61-62, 72, 78]. [Doc. 14 at 5-11]. The Commissioner additionally contends that Plaintiff has not identified any evidence showing that her condition imposed limitations beyond the limitations appearing in the ALJ's RFC finding and hypothetical question or that she was limited to sedentary work. [*Id*. at 13]. The Commissioner argues that it therefore follows that the RFC and hypothetical question posed to the ALJ were complete and that substantial evidence supports the ALJ's reliance on the VE testimony. [*Id*. at 12-13].

Having carefully reviewed the record, the ALJ's decision, and the parties' arguments, the Court concludes that Plaintiff has not provided a basis for reversal of the Commissioner's decision. First, the ALJ did not improperly rely on Plaintiff's lack of mental-health treatment to discount her testimony regarding her symptoms, [R31]. As Plaintiff points out, she did testify during her hearing before the ALJ that her lack of insurance affected her treatment. [R56-57 (cited in [Doc. 13 at 10])]. However, the record citations show that Plaintiff testified that the lack of insurance prevented her from undergoing imaging procedures, such as x-rays or an MRI, which might have

26

documented impairments supporting her allegations of back pain and might have led to more aggressive treatment. [R55-56]. With regard to her mental-health treatment, in contrast, there is no testimony that Plaintiff could not afford treatment; rather, when she was asked whether she was under the care of any mental-health professional, she testified that it had never been recommended that she see a mental-health professional and that she "take[s] an anti-depressant every day and get[s] through it the best [she] can." [R77-78]. Thus, Plaintiff has in fact pointed to no record evidence to suggest that her lack of treatment by a mental-health specialist was attributable to her inability to pay. [*See* Doc. 13 at 10]. Consequently, the undersigned finds no reversible error in the ALJ's consideration of the fact that Plaintiff was not under the care of a mental-health professional. *See Manzo v. Comm'r of Soc. Sec.*, 408 Fed. Appx. 265, 269 (11th Cir. Jan. 7, 2011) (refusing to speculate that the plaintiff's family physician might have decided not to refer her for mental-health treatment because the physician knew her insurance would not cover the treatment).

Second, the undersigned finds that the ALJ's decision not to include mental-health limitations in the RFC is supported by substantial evidence. It is true, as Plaintiff points out, that despite Dr. Webb's opinion stating that Plaintiff has mild limitations in interacting with the public, co-workers, and supervisors, and adapting to

the stress of a typical work environment, [R556], and the ALJ's finding that Plaintiff has mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace, [R31-32], the ALJ did not include mental limitations in the RFC, [R32]. The ALJ explained, however, that he found Plaintiff's that "medically determinable mental impairment of depressive disorder does not cause more than minimal limitation in [her] ability to perform basic mental work activities." [R31]. Specifically, the ALJ pointed to Plaintiff's admission during her interview with Dr. Webb that Xanax and BuSpar[28] reduced her anxiety and depressive symptoms without side effects, [R31, 555], and to the mental-status examination Dr. Webb conducted, which revealed cooperative attitude, normal speech, sad affect, adequate energy, coherent thoughts, intact judgment, and average intellect, [R31, 554]. The ALJ also explained how he reconciled his findings of mild mental-health limitations in the areas of activities of daily living, social functioning, and concentration, persistence, or pace, with his determination that the limitations did not cause more than minimal limitations in Plaintiff's ability to work:  that despite Plaintiff's mild limitation in activities of daily living, Plaintiff was capable of personal grooming, cooking, driving,

---

[28]    BuSpar (buspirone) is used to treat anxiety disorders or in the short-term treatment of symptoms of anxiety. MedlinePlus, Buspirone, https://medlineplus.gov/druginfo/meds/a688005.html (last visited 3/6/18).

28

AO 72A
(Rev.8/8
2)

and shopping, and she reported that she had difficulty cleaning due not to psychological issues, but rather to back pain, [R31, 553]; that despite Plaintiff's mild limitation in social functioning, Plaintiff stated that she was able to interact with family and friends and "had no difficulty in getting along with others," [R32, 553]; and that despite Plaintiff's mild limitation in the area of concentration, persistence, or pace, Dr. Webb opined that Plaintiff was not limited in sustaining concentration, persistence or pace that would permit the timely completion of assigned tasks, could understand and remember simple and detailed instructions, could sustain concentration, and could work at a normal pace, [R31-32, 555]. Plaintiff does not challenge the ALJ's reliance on Plaintiff's admissions regarding her medication, activities of daily living, or social capabilities or his reliance on Dr. Webb's opinion of Plaintiff's capability in the area of concentration, persistence, and pace, and the Court finds the explanation and citations to evidence to be sufficient to enable a reasonable jury to find that Plaintiff's depression caused no more than minimal restriction in her ability to work. Consequently, the Court finds no reversible error in the ALJ's consideration of Plaintiff's mental impairment. *See Hubbard v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 643, 647-48, 650 (11th Cir. July 27, 2015) (affirming where ALJ gave great weight to psychological consultant's opinion that mental impairment caused a

mild restriction in activities of daily living yet included no mental limitations in the RFC, explaining that substantial evidence supported the decision because the consultant's assessment indicated that the plaintiff "suffered little or no limitation in daily activities based on her alleged impairment"); *Brumfield v. Berryhill*, Case No. 5:16cv253/EMT, 2018 WL 617036, at *7 (N.D. Fla. Jan. 29, 2018) (finding no error in the ALJ's failure to include mild mental limitations in the questions posed to the VE where the ALJ specifically found that the limitations caused no more than a minimal limitations in the plaintiff's ability to perform basic mental work activities and the finding was supported by the record).

Third, the undersigned finds no reversible error in the ALJ's weighing of the opinions of Dr. Webb and Dr. Kini. As discussed in the paragraph immediately above, the ALJ makes plain that although he assigned significant weight to Dr. Webb's opinion, he found that Dr. Webb's opinions that Plaintiff had mild limitations in interacting with the public, coworkers, and supervisors and mild limitations in adapting to the stress of a typical work environment were tempered by evidence that medication reduced Plaintiff's depression and anxiety without side effects, [R555], Plaintiff can interact with family and friends, [R553], she has no difficulty getting along with others, [R553], and she has not required care from a mental-health professional, [R77-78], and

30

AO 72A
(Rev.8/8
2)

thus her mental limitations do not have any more than a minimal effect on her ability to work. [R31-32]. The undersigned therefore finds that the ALJ sufficiently explained why he discounted Dr. Webb's opinions that Plaintiff had mild limitations in interacting with the public, coworkers, and supervisors and mild limitations in adapting to the stress of a typical work environment.

Plaintiff's argument that Dr. Kini's opinion was "vague," "conclusory," unsupported by examination results, and due to be disregarded as an impermissible opinion of disability is also unavailing. Plaintiff aptly points out that the decision of disability is not delegable to a physician but is instead reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). It is also true, however, as Plaintiff implicitly concedes, that an ALJ is not prohibited from considering a doctor's opinion of disability. [*See* Doc. 13 at 12 (quoting *Kelly v. Comm'r of Soc. Sec.*, 401 Fed. Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source, *but will be taken into consideration*.") (emphasis added))]. Moreover, review of the record shows that Dr. Kini's opinion was far from vague, conclusory, or unsupported but rather was based on an interview, x-

AO 72A
(Rev.8/8
2)

rays, and physical examination that yielded detailed findings: x-rays showing a normal lumbar spine; a negative straight-leg test; and normal range of motion, manual dexterity, grip strength, graded extremity strength, and gait. [R575-81]. Given these detailed—and overwhelmingly anodyne—examination results, there can be little question that substantial evidence supported the ALJ's decision to assign "significant weight" to Dr. Kini's opinion. Accordingly, the Court finds no basis for reversal in the ALJ's consideration of Dr. Kini's opinion.

Finally, because the Court finds that Plaintiff has failed to show any reversible error in the ALJ's determination of the RFC and the hypothetical question posed to the VE, it therefore follows that the question posed to the VE was not incomplete. Thus, the Commissioner's decision is not susceptible to reversal upon Plaintiff's argument that the decision is unsupported by vocational evidence that Plaintiff is capable of performing work.

## VII. CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter final judgment in the Commissioner's favor.

32

**IT IS SO ORDERED and DIRECTED**, this the 6th day of March, 2018.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)